IN THE MATTER OF THE GENERAL ASSIGNMENT FOR THE BENEFIT FOR CREDITORS OF XAVIERS, INC., T/A THE WELL, A NEW JERSEY CORPORATION, ASSIGNOR, TO MYRON S. LEHMAN, ASSIGNEE.

UNITED STATES OF AMERICA, APPELLANT, v. MYRON S. LEHMAN, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 30, 1961—Decided April 3, 1961.

562

564

Before Judges CONFORD, FREUND and KILKENNY.

*Mr. Raymond W. Young,* Assistant United States Attorney, argued the cause for appellant (*Mr. Chester A. Weidenburner,* United States Attorney, attorney; *Mr. Young* on the brief).

*Mr. James E. Masterson* argued the cause for respondent (*Messrs. Kleinberg, Moroney & Masterson,* attorneys).

*Mr. Allan L. Tumarkin,* by leave of court, filed a brief as *amicus curiae.*

The opinion of the court was delivered by

FREUND, J. A. D. This appeal by the United States, a priority creditor of the corporate assignor, Xaviers, Inc., t/a The Well, is from a judgment of the Essex County Court, Probate Division, awarding commissions to the assignee and counsel fees to his attorneys, as well as reimbursing both for out-of-pocket disbursements on behalf of the estate.

The assignor had been engaged in the operation of a tavern-restaurant in West Caldwell, N. J. The corporate estate was assigned to Myron S. Lehman, Esq., a member of the bar of this State, on August 13, 1959, and recorded the following day. Inventory and appraisal of the estate revealed only one asset—a plenary retail consumption license, estimated to have a worth of $1,000. Without seeking the approval of the court, the assignee engaged the services of his present attorneys. The latter arranged for the sale of the license at public auction, and a transfer of the license for the sum of $3,100 was made and was confirmed by the Probate Division.

The list of claims filed with the assignee indicated 33 general unsecured creditors with claims totalling $16,965.57 and three priority claimants in the amount of $7,196.85. The United States, more specifically the Director of Internal Revenue, asserts a claim of $4,696.60.

The complaint and final account of the assignee recited distributions of $446.51, leaving an estate balance of $2,653.49. The assignee then made application for and was granted commissions of $620 and $46.30 for his disbursements. His attorneys, by separate application, prayed that they be allowed $600 as compensation, plus $22.24 for out-of-pocket disbursements. The court awarded the requested reimbursement but limited their counsel fee to $400.

The Government's principal objections to the awards are shaped in the following contentions: (1) an assignee may engage an attorney only upon prior approval of the court, and approval was not obtained in the instant case; (2) the

statutory 20% maximum of "commissions and allowances" permitted an assignee for the benefit of creditors by *N. J. S.* 2*A* :19–43 is inclusive of fees to counsel engaged by the assignee; and (3), in any event, the commissions and allowances approved by the probate judge are unreasonable and excessive under the prevailing circumstances.

## I.

We will consider first the failure of the assignee to obtain a court order prior to engaging counsel and the effect of that omission on his attorneys' right to separate fees. Respondent unequivocally states in his affidavit of services that immediately upon receiving the deed of assignment from the assignor, he "retained the services of Kleinberg, Moroney & Masterson to act as my counsel in these proceedings."

Appellant maintains that the engagement of counsel can only be accomplished by motion and affidavit seeking a court order, pursuant to *R. R.* 4:68–4, which provides that:

"No receiver shall employ an attorney, counsel or accountant except upon the order of the court supported by an affidavit of the receiver setting forth the necessity for the employment. The court before authorizing the employment of an attorney, counsel or accountant, shall be satisfied that he is not interested in the suit, or in any of the parties thereto, in such a way as to disqualify him from serving in good faith the receiver as a fiduciary for all of the stockholders and unsecured creditors of the corporation, or the unsecured creditors of the partnership or individual. The employment of more than one counsel may be authorized, but the total fees allowed them shall in no event be increased because of the number of counsel employed."

The Government notes that the practice with respect to the employment of counsel in receiverships is made applicable to assignment proceedings by *R. R.* 4:69, which simply states that "the practice relating to assignments for the benefit of creditors under *N. J. S.* 2*A* :19–1 *et seq.* shall conform as nearly as practicable to the procedure relating to insolvent corporations."

Respondent, on the other hand, contends that the cited rules are entirely inapplicable to the instant proceedings. He notes that the assignee is given a choice, by *N. J. S.* 2A :19–7, to record his assignment either with the surrogate of the county where the assignor resides or with the clerk of the Superior Court, and should he choose the former alternative, the proceedings—by virtue of *N. J. S.* 2A :19–1(c) —are held, as here, in the County Court, Probate Division. Once jurisdiction is established in the Probate Division, he reasons, *R. R.* 4:69 and *R. R.* 4:68 of the Superior Court rules no longer govern. Respondent predicates this last conclusion on *R. R.* 5:2–1, extending the applicability of most of the Superior Court rules to matters of a civil nature cognizable in the County Courts, "other than probate matters." He notes that probate practice in the County Courts is governed by *R. R.* 5:3–1, providing *inter alia* that "the practice in the probate division of the county courts with respect to all probate matters cognizable in those courts shall be governed by Rules 4:55–7(b), (d) and (e), 4:81–4 to 4:81–6, 4:83–6 to 4:83–8, 4:84–1 to 4:84–6, and 4:99 to 4:117, inclusive insofar as applicable * * *," with certain listed exceptions not here relevant. Since the pertinent rules are not included therein, the assignee concludes that the instant proceedings were not affected by *R. R.* 4:68–4 and *R. R.* 4:69.

This line of argument is at odds with both the rationale behind *R. R.* 4:69 and the policy which inspired the requirement of prior judicial sanction for the appointment of receivers' attorneys. It ignores the very significant policy question of whether the right of the assignee to engage counsel without preliminary court approval should differ according to the tribunal in which he chooses to file his assignment.

*R. R.* 4:69 was designed to conform, as nearly as practicable, the procedural aspects of assignments for the benefit of creditors to the practice relating to insolvent corporations, set forth in *R. R.* 4:68. Most prominent among the

receivership rules are those regulating the appointment and
manner of compensation of attorneys. See *e. g., R. R.*
4:68–4, 4:68–5, 4:68–6. It is therefore beyond dispute
that assignees filing in the Superior Court are bound by
these rules in their engagement of counsel.

 We find no logical basis upon which to distin-
guish identical statutory proceedings brought in the County
Court, Probate Division. Nor do our rules of court impel
such a distinction. One purpose of our revised rules, adopted
September 15, 1948, was to make uniform, as far as prac-
ticable, Superior Court procedure in Law, Chancery, and
Probate actions, as well as to provide substantially similar
procedures for actions cognizable in the Law or Probate
Divisions of the County Court. See 7 *N. J. Practice*
(*Clapp, Wills and Administration*), § 950, *p.* 517. Thus
is explained the broad scope of Part IV procedure, encom-
passing "all actions of a civil nature" in the Superior Court,
*R. R.* 4:1–1, and, with the exception of certain enumerated
rules, all matters of a civil or probate nature conferred by
statute on the County Court, a tribunal of constitutionally
limited jurisdiction. *R. R.* 5:2–1; 5:3–1. While *R. R.*
5:3–1 makes specifically applicable, in the County Court,
to matters traditionally characterized as "probate," those
of the Superior Court rules concerned with similar proceed-
ings, it neither includes nor excludes *R. R.* 4:68 and 4:69.
The silence at this juncture is not fatal, however. The
list of rules in *R. R.* 5:3–1 is not intended to be exhaustive,
and all of the additional procedures set forth in Part IV,
insofar as they may be utilized consistently with Part V and
the delegated statutory jurisdiction of the County Court,
remain in force in the Probate Division by virtue of the
express language of *R. R.* 5:3–7, providing in pertinent part
that:

"The rules in Part IV, and in particular Rule 4:85 and Rules
4:16 to 4:29, shall, in so far as applicable, apply to all actions in
the probate division of the county court * * *."

The latter rule was construed, for example, before its clarifying amendment in 1955, to permit, in probate actions, discovery by means of interrogatory in accordance with *R. R.* 4:23–1 to 13, despite the absence at that time of any specific reference thereto in Part V. *In re Blake's Estate,* 33 *N. J. Super.* 229 *(Cty. Ct.* 1954).

██ Having been furnished no persuasive reason why *R. R.* 4:69, in its envelopment of those adoptable features of *R. R.* 4:68, should not be considered applicable to Probate Division actions, we hold that it is so applicable by the terms of *R. R.* 5:3–7. That assignments for the benefit of creditors evolved in the former Orphans' Court, and were treated as trust estates with no requirement for a prior order allowing the retention of counsel, is no reason to hold to the contrary. By statute and rule of court, jurisdiction over assignment proceedings has been enlarged and the mechanics of employing counsel placed under more stringent supervision. We recognize both developments and decide accordingly.

The next question is whether the probate judge's award of compensation to respondent's attorneys was curative of the lack of a prior order, or whether failure to obtain the order in advance precluded later validation of the employment. We are cited to the proposition that a fiduciary always has the right and duty to employ counsel in good faith to act on behalf of the estate. This statement is substantially correct, but as applied to the instant proceedings, it must be read in the light of *R. R.* 4:68–4 and the history of the engagement of counsel in receiverships.

█ As an officer of the court, held to the strict accountability of a trustee, *Hershey v. Stone & Hershey,* 10 *N. J. Misc.* 967, 975–976 *(Ch.* 1932), the receiver has traditionally been required to seek instructions before incurring any major expenditures on behalf of the estate. The engagement of separate counsel was always considered a prominent step. The chancellors, cognizant of the difficulties entailed in administering an insolvent estate, generally preferred the appointment of an attorney as receiver, not only

better to meet these difficulties but also to avoid the often unnecessary double expense to the estate resulting from the employment of separate counsel by a lay receiver. *Simpson v. Vitaphone Co.*, 88 *N. J. Eq.* 430 (*Ch.* 1917); *Hershey v. Stone & Hershey, supra,* 10 *N. J. Misc.*, at *p.* 979. It was recognized, however, that the attorney-receiver might be involved in legal controversy above and beyond the complex executive and administrative duties of his appointed position. *Conover v. West Jersey Mortgage Co.*, 96 *N. J. Eq.* 441, 446 (*Ch.* 1924). His recourse was application to the court, by verified petition, seeking an order appointing, or empowering him to appoint, separate counsel; without such order, the appointment could not be charged against the estate. See *Simpson v. Vilaphone Co., supra,* 88 *N. J. Eq.*, at *p.* 432; *Conover v. West Jersey Mortgage Co., supra,* 96 *N. J. Eq.*, at *p.* 446; *Shachat v. Standard Auto Supply Co.*, 106 *N. J. Eq.* 105, 111 (*Ch.* 1930).

The accepted practice was incorporated into *Chancery Rule* 106, an almost verbatim forerunner of the present *R. R.* 4:68–4. The mandatory nature of the requirement of prior appointment as a prerequisite to compensation as counsel is also reflected in *R. R.* 4:68–6, slightly altered successor to *Chancery Rule* 108 and providing that:

"Unless a receiver applies for, and, until he obtains leave to employ an attorney, the plaintiff's attorney may proceed with the conduct of the cause; but except where the latter is appointed by the court attorney or counsel for the receiver, he shall not be allowed by the court any compensation for his services."

The rule is explicit in its statement that only attorneys appointed by the court may be compensated from the receivership. See 2A *N. J. Practice* (Waltzinger), *p.* 174. We reiterate that this requirement, made applicable to assignment proceedings by *R. R.* 4:69, is mandatory in every respect. The court may not make an after-the-fact determination of whether the attorney's services were necessary and whether his employment met the criteria of *R. R.*

4:68–4. Not only would such a determination be difficult to arrive at after the estate has been settled, but the very policy of preventing the draining of the estate by the duplication of professional talent would almost inevitably be eroded. To determine that counsel's services are not necessary in the first instance is one thing; to deny counsel compensation for work already performed is another. We conclude that failure to obtain the prior appointment must result, as here, in absolute rejection of the attorneys' application for compensation.

 It has been brought to our attention by counsel for respondent, at oral argument, and by *amicus curiae,* that the feared erosion has already occurred and that *R. R.* 4:68–4 is honored more in its breach than in its observance. Specifically, we are told that only one of the County Courts (Union) in this State has heretofore required entry of an order of appointment prior to the allowance of counsel fees to the assignee's attorney. Whether such is the case, and whether the genuine doubt engendered over the applicability of *R. R.* 4:69 to Probate Division proceedings should operate to relieve the respondent's attorneys, in this case, from total denial of compensation, we need not decide. Our review of the record and briefs and our consideration of the points raised on oral argument convince us that the duties of the assignee were not here sufficiently complex to entitle him to engage an attorney.

Respondent is a licensed attorney in this State, presumably conversant with assignment proceedings. The estate consisted of a single asset, the liquor license, which had to be appraised and sold. The realization from the sale was a relatively modest sum. As gathered from his attorneys' petition for allowance, no legal actions were commenced either by or against the assignor or assignee. The activities of the attorneys consisted of administrative functions all of which could have been, and were in part, performed by the assignee himself. These included discussion concerning the deed of assignment and the nature and location of the busi-

ness; arranging a public sale of the license; preparing a petition to confirm and order confirming the sale and attending a hearing at which it was confirmed; discussing "matters affecting the administration" of the estate; conferring with creditors; causing copies of the notice of settlement, notice of filing claims, and notice of sale to be sent to all of the assignor's creditors; and attending the hearing on the assignee's final account.

While the allowance of attorneys' fees is ordinarily a matter resting within the sound discretion of the trial judge, *In re Broad Street National Bank of Trenton,* 37 *N. J. Super.* 171, 174 (*App. Div.* 1955), action which is plainly erroneous and manifestly a mistaken exercise of that discretion may be set aside. *Smith v. Smith,* 17 *N. J. Super.* 128, 133 (*App. Div.* 1951). Of course, we are not here concerned with the reasonableness of the amount awarded but rather with the lack of need for counsel in the first instance. Considering the assignee's status as an attorney, the sparse composition of the estate, the relatively simple nature of the proceedings involved, and the absence of litigation, we conclude that no adequate showing has been made to support the engagement of counsel by respondent, and that his attorneys are therefore not entitled to any allowance. We will uphold, however, the trial judge's award to counsel of $22.24 representing disbursements. This sum was an expense on behalf of the estate, and, had the tasks properly been carried out by the assignee himself, the amount would probably have been charged to the estate in any event.

## II.

We next consider the scope of the maximum limitation in *N. J. S.* 2*A*:19–43 upon "commissions and allowances" awarded to the assignee, including the question of whether counsel fees are encompassed therein. Because of our conclusions in Part I, *supra,* resolution of the latter issue is not essential to our disposition of the instant matter. However, the question has been thoroughly briefed by the parties

and by *amicus curiae,* and is of interest to the bar, especially in light of the opinion in *In re Pynn-Hawley Co.,* 63 *N. J. Super.* 50 (*Cty. Ct.* 1960), holding that the combined commissions and allowances for the assignee and properly hired counsel cannot exceed the statutory limit.

Construction of the statute, moreover, particularly with reference to its use of the term, "commissions and allowances," has an important bearing on appellant's contention that the award to the assignee himself was excessive.

*N. J. S.* 2A:19–43 provides as follows:

"Such commissions and allowances shall be made to the assignee or to the personal representatives of a deceased assignee, or to a person who has been removed by the court from his office as assignee for any cause other than his misconduct, on any intermediate or final account, as the court shall consider just, but not in excess of 20% on all sums received by the said assignee, except that this limitation shall be inapplicable where the amount of the estate is less than $500."

Appellant maintains that "commissions," as used in the statute, is an intended reference to compensation granted the assignee for executive and administrative services, and that "allowances" is all-inclusive of the services performed by "agents and servants engaged by the trustee, administration expenses or disbursements." Also see *In re Pynn-Hawley Co., supra,* 63 *N. J. Super.,* at *p.* 54. Respondent argues that such a construction of the statute would render proper administration of assigned estates "difficult, if not impossible," and points out that the 20% limitation, if seemingly high as a compensation percentage, is not a fixed fee but merely establishes the range within which the court may exercise its discretion.

Our study of the problem indicates that a distinction must be drawn between those "allowances" made to the assignee and thereby embraced by the statute, and the allowance of counsel fees to a properly appointed attorney. We turn first to a consideration of the statutory term as it bears upon the trial court's award to respondent personally.

■ The established rule of the English common law was that an assignee for the benefit of creditors was not entitled to compensation for his services. See 4 *Am. Jur., Assignments for Benefit of Creditors,* § 133, *p.* 406. This stringent doctrine was recognized in *State Bank of Elizabeth v. Marsh & Edgar,* 1 *N. J. Eq.* 288, 295–296 (*Ch.* 1831), a case involving trustees for the benefit of creditors, but was considered to be qualified by the court's discretion in awarding "commissions" to the trustees as compensation for their "trouble and care" in executing the trust. Chancellor Vroom expressly distinguished the discretionary "commissions" from the "just allowances" to which the trustees were concededly entitled, the latter consisting of their "charges and expenses."

Statutory approval of compensation of estate fiduciaries, *Revision of* 1846, *p.* 214, § 26, in accordance with their "actual pains, trouble, and risk in settling the estate," see *Warbass v. Armstrong,* 10 *N. J. Eq.* 263, 264 (*Ch.* 1854), was soon extended to the realm of assignees by statute and judicial construction. *Revision of* 1877, *p.* 40, § 18; *Sliker v. Fisher,* 45 *N. J. Eq.* 132, 134–135 (*Prerog.* 1889). The predecessor of the present compensation statute was adopted by *L.* 1899, *c.* 54, § 19, *p.* 155 and provided that:

"Such commissions and allowances shall be made to the assignee or to the personal representatives of a deceased assignee, or to a person who has been removed by the court from his office as assignee for any cause other than his misconduct, on any intermediate or final account as the court shall consider just."

The statute remained intact, see *R. S.* 2:34–51, until amended in 1950 to its present form. *L.* 1950, *c.* 320, *p.* 1078, § 1. As originally introduced, the amendment contained a 5% limitation; it was changed in committee to 20% and the $500 proviso was inserted. The statement attached to the legislation is less than illuminating: "The purpose of this bill is to provide a maximum limitation on commissions and allowances to assignees for the benefit of creditors."

We are thus confronted with a constructional problem, the resolution of which must be accomplished against a meager and somewhat confusing case law background. We may not assume that the Legislature's use of the term "allowances," in *N. J. S.* 2A:19–43, is mere surplusage unless such a construction is unavoidable. It is here avoidable, though perhaps not entirely reconcilable with a meaningful statutory design.

The generally accepted notion, traceable to *State Bank of Elizabeth v. Marsh & Edgar, supra,* appears to be that "commissions" constitute direct compensation for the fiduciary's own efforts, and "allowances" reimbursements of the fiduciary for administration expenses and the cost of hiring such assistants or agents as are reasonably necessary to the performance of his tasks. See 6 *N. J. Practice (Clapp, Wills and Administration),* § 504, *p.* 452. This distinction accords with the general practice relating to fiduciary's applications for payment. That is, application will be made both for compensation in the form of a commission, predicated either on a fixed percentage of the estate or on the efforts of the fiduciary, and, in addition, a prayer for allowance of reimbursement for out-of-pocket expenditures made on behalf of the estate.

Analogous fiduciary compensation statutes also comport with this view. In the area of statutory receiverships, the court is directed to allow the receiver "a reasonable compensation * * * for his services and the costs and expenses of the administration of his trust, and the costs of the proceedings in the court." *N. J. S. A.* 14:14–22. While the compensation of an estate fiduciary is denominated a "commission," calculated according to a fixed schedule of amounts and percentages, the commissions are expressly awarded to the fiduciary "over and above their actual expenses." *N. J. S.* 3A:10–2.

We are of the view that a similar distinction between actual compensation and mere reimbursement was included in the original assignee's statute, *L.* 1899, *c.* 54, § 19,

*p.* 155, was carried forward in its successor, *R. S.* 2:34–51, and was preserved in the 1950 amendment. Admittedly, the statute in its present form is not entirely defensible in logic. While it made good sense, in the prior enactments, to direct the court to exercise its discretion in the fixing of commissions and allowances, and while a percentage limitation on commissions may certainly be justified, it is difficult to see why the presumably *necessary* expenditures of an assignee should either be subject to a maximum limitation or be indirectly determinative of the maximum amount of compensation allowable to the fiduciary. In a general way, the amount of the assignee's disbursements may well be directly proportionate to the amount of work involved in the estate. The effect of the statute is to reduce his potential compensation as the work becomes more complex and the expenditures greater. Moreover, for purposes of placing a percentage limitation on expenditures, there is little reason to distinguish those expenses for which direct reimbursement is sought by the assignee from those already made out of the estate and reflected in the statement of final account. All that can be said is that the statute here involved deals exclusively with sums awarded directly to the assignee by the court and not with approval of the receipts and distributions contained in his account.

While giving the statute the only reading reasonably consistent with its language, we have treated in some detail its substantive defects in order to emphasize the immediate need for corrective legislation. To place a maximum limitation upon the compensation of a fiduciary is one thing; to impose a similar percentage limitation upon his expenditures, thereby exposing him, through no fault of his own under settled principles concerning fiduciary duties and obligations, to the peril of concluding his tasks with less funds than he had when he assumed the position, is another. We note that remedial legislation is presently pending in the State Assembly: *Assembly Bill* A–386, introduced

February 21, 1961 as an amendment to *N. J. S.* 2*A*:19–43, would delete the words, "and allowances," from the statute.

Applying the above stated principles to the instant case, we are compelled to conclude that the total award to the assignee must be reduced in the amount of $46.30. Respondent's commissions of $620 totalled exactly 20% of the $3,100 estate; he is therefore not entitled to any additional funds either in the form of commissions or allowances. The most orderly procedure would be to allow him first his disbursements, $46.30, and treat the remainder of the permissible award, $573.70, as commissions. We do not find that the sum mentioned is excessive, considering the assignee's activities in this case. His award, therefore, will stand as modified.

Proceeding to a consideration of the effect of the statute upon the amount of the fee awardable to an assignee's counsel, we are of the opinion that the phraseology of *N. J. S.* 2*A*:19–43 does not embrace compensation awarded to such counsel, since he is compensated directly by the court and not by the assignee. Counsel fees have in the past been considered, and, by court rule, now must be considered separate and apart from the fiduciary's compensation. In the area of statutory receiverships, made a persuasive analogy by the application of *R. R.* 4:68 to assignment proceedings, the separation is established between the receiver's compensation and that directly awarded, upon petition, to his attorney. See *Atlas Fence Co. v. West Ridgelawn Cemetery*, 135 *N. J. Eq.* 87 (*Ch.* 1944).

As stated herein, the employment of separate counsel by receivers and assignees has always been considered a significant step in the administration of the estate, and both the appointment and compensation of counsel are under the strict supervision of the courts. Not only must the employment of an attorney or counsel have the prior approval of the court, *R. R.* 4:68–4, but also *R. R.* 4:68–5(a) provides a separate allowance for counsel, the amount to be measured by a standard distinct from that used to gauge the receiver's

compensation. Unlike other agents employed by the assignee, an attorney (or an accountant) may neither be paid directly out of the estate nor compensated directly by the fiduciary, with the latter obtaining reimbursement by order of the court. It is clear, therefore, that an allowance to counsel for the assignee would not constitute "commissions and allowances * * * *made to the assignee* * * *," within the meaning of the enactment (emphasis added).

## III.

In view of our conclusions hereinabove, the judgment of the trial court will be modified and the following order entered: Respondent's attorneys will be denied their requested allowance, with the exception of the sum of $22.24 representing their disbursements. Respondent will be awarded $46.30 as an allowance for his disbursements and the sum of $573.70 as commissions.

So ordered; no costs.